**UNITED STATES of America,**
**Appellee,**

v.

**Rasheen L. BOWDEN, Defendant–**
**Appellant.**

**No. 01–1675.**

United States Court of Appeals,
Second Circuit.

Sept. 6, 2002.

Richard Power Maigret, Assistant United States Attorney (Michael A. Battle, United States Attorney for the Western District of New York, on the brief), Buffalo, NY, for Appellee.

John J. Molloy, West Seneca, NY, for Defendant Appellant.

Present MESKILL, STRAUB and KATZMANN, Circuit Judges.

### *SUMMARY ORDER*

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED and the appellee's motion for partial dismissal is GRANTED.

Defendant–Appellant Rasheen L. Bowden ("Bowden") appeals from a judgment of conviction filed on December 16, 2001, in the United States District Court for the Western District of New York (William M. Skretny, *Judge*), following his plea of guilty to one count of possessing a firearm while a convicted felon, in violation of 18 U.S .C. § 922(g)(1). On appeal, Bowden makes two arguments. First, he challenges the District Court's denial of his

motion to suppress the firearm found on his person and statements that he made after the discovery of the firearm. Second, he asserts that the sentencing court erred in enhancing his offense level under the United States Sentencing Guidelines ("Guidelines") and in sentencing him to 54 months' incarceration. The Government has moved to dismiss the sentence-related portion of Bowden's appeal, on the ground that Bowden waived his right to appeal his sentence. For the reasons stated below, we grant the Government's motion and affirm the judgment of the District Court.

## I.

The following facts are undisputed. On September 26, 1999, police officers for the city of Niagara Falls, New York, were on duty at Pharaoh's Bar, a location with regularly scheduled police presence due to the prevalence of fights and other disturbances at closing time. Moments before closing, officers observed Bowden leaving the bar and, based on his tattered clothing, suspected he had been in a fight. Bowden approached a Lincoln Town Car in the parking lot and became engaged in an altercation with another man. The officers walked toward Bowden but, upon their approach, the confrontation appeared to end and Bowden left the lot.

Shortly thereafter, Bowden returned to the parking lot in his car, driving at high speed. He stopped abruptly in front of the Lincoln Town Car, blocking it from leaving the lot. Bowden quickly exited his car and approached the other car in an aggressive manner, shouting and gesturing. The officers noted that Bowden had changed his clothing and, as he approached the car, he repeatedly reached towards his waistband with his right hand. Bowden's jacket appeared unusually heavy for the warm night. The officers interpreted Bowden's hand movements toward his waistband as an attempt to adjust or reach for a concealed weapon. The officers then rapidly approached Bowden, instructing him to stop and raise his hands, whereupon Bowden rushed back to his car. The officers subdued Bowden, discovered that he was wearing a bulletproof vest, and, upon frisking him, found a .40 caliber Glock semiautomatic loaded pistol in his waistband. Bowden was arrested and made several brief statements to the officers before being read his rights under *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), after which he made additional statements in response to questioning.

Bowden was indicted on November 9, 1999, for possessing a firearm while a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On May 2, 2000, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, Bowden filed a motion to suppress the firearm and statements that he made after its discovery. Following a suppression hearing, Magistrate Judge Leslie G. Foschio filed a report with the District Court recommending that it deny the suppression motion. On June 5, 2001, the District Court adopted the report and recommendation and denied Bowden's motion. On August 2, 2001, Bowden pled guilty to the indictment pursuant to a plea agreement which reserved his right to appeal the denial of his suppression motion but otherwise waived his right to appeal any sentence of 63 months or less. By a judgment filed on December 16, 2001, the District Court sentenced Bowden to, *inter alia*, 54 months' incarceration. Bowden timely appealed, and the Government moved for partial dismissal of the appeal on the ground that Bowden had waived his right to appeal his sentence.

## II.

On appeal, Bowden first argues that the District Court erred in denying

his motion to suppress because, under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officers lacked reasonable suspicion to justify stopping and frisking him. We disagree.

The Supreme Court has long held that an officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1868); *see United States v. Bayless*, 201 F.3d 116, 132–33 (2d Cir.), *cert. denied*, 529 U.S. 1061, 120 S.Ct. 1571, 146 L.Ed.2d 474 (2000). Moreover, if officers reasonably suspect that a lawfully detained individual is armed, they may perform a protective, limited search for weapons. *See McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir.1997). Reasonable suspicion, however, cannot easily be reduced to a neat set of legal rules. *See Sokolow*, 490 U.S. at 7, 109 S.Ct. 1581. Rather, assessment of reasonable suspicion requires objective evaluation of the "totality of the circumstances." *Bayless*, 201 F.3d at 133.

We review a determination of reasonable suspicion *de novo*. *See id.* at 132. In reviewing a denial of a suppression motion, the evidence supporting the denial is construed in the light most favorable to the government. *See United States v. Peterson*, 100 F.3d 7, 11 (2d Cir.1996). After evaluating the circumstances that prompted the stop " 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training,' " we agree with the District Court's conclusion that the stop was justified. *Bayless*, 201 F.3d at 133 (quoting *United States v. Oates*, 560 F.2d 45, 61 (2d Cir. 1977)).

The circumstances preceding the arrest support a finding of reasonable suspicion. Pharaoh's Bar, the site of the incident, was notorious for disturbances warranting a police presence. *See Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (noting that the prevalence of criminal activity at the location of the stop is a factor relevant to reasonable suspicion). Additionally, Bowden's initial altercation in the parking lot followed by his high-speed return and subsequent aggressive behavior supported the officers' "reasonable belief that the suspect pose[d] a danger." *See McCardle*, 131 F.3d at 48; *Oates*, 560 F.2d at 62 (stating that the police officer's belief "that the suspect may be armed and dangerous can be predicated on the nature of the criminal activity involved.")). Moreover, Bowden's attempted flight, after having been told by the police to stop, bolsters a finding of reasonable suspicion. *Cf. Wardlow*, 528 U.S. at 124, 120 S.Ct. 673 (holding that an individual's unprovoked flight from the police, considered in combination with his presence in a high-crime area, supports reasonable suspicion).

■ Reasonable suspicion is further supported by Bowden's hand movements near his waistband which, to the eyes of experienced police officers, suggested the presence of a gun. *See Oates*, 560 F.2d at 61 (recognizing that "some patterns of behavior which may seem innocuous enough to the untrained eye may not appear so innocent to the trained police officer who has witnessed similar scenarios numerous times before."). Moreover, the officers believed that Bowden's unseasonably heavy jacket was worn to conceal a weapon. In *United States v. Rogers*, No. 95 Cr. 1136, 1996 WL 422260, at *4–5 (S.D.N.Y. July 29, 1996), *aff'd*, 129 F.3d 76 (2d Cir.1997), officers were found to have reasonable suspicion to justify frisking a suspect after

she moved her hand toward her leg because the suspect's actions leading up to the gesture had given indications that criminal activity was afoot. Likewise, the circumstances in this case reasonably support the officers' decision to stop and frisk Bowden's waistband area, resulting in discovery of the gun. *See McCardle,* 131 F.3d at 48 ("the suspect need not actually be dangerous to validate such a limited-purpose search, so long as the officer has a reasonable belief that the suspect poses a danger and may have a weapon within his reach."). Thus, in light of the totality of the circumstances, the officers had reasonable suspicion to stop and frisk Bowden.[1]

### III.

We need not linger on Bowden's appeal of his sentence. "A defendant's waiver of the right to appeal a sentence within an agreed upon Guidelines range generally is enforceable" when it is made voluntarily and knowingly. *United States v. Garcia,* 166 F.3d 519, 521 (2d Cir.1999). In his plea agreement, Bowden voluntarily and knowingly waived his right to appeal a term of imprisonment or 63 months or less. Bowden's plea agreement posited two potential ranges, 51–63 months or 46–57 months depending on the total offense level and criminal history, and expressly barred him from appealing a sentence within or below either range. The District Court applied a total offense level of eighteen and a criminal history category of V, and consequently imposed a prison term of 54 months, a sentence within both specified ranges. Furthermore, Bowden acknowledged that he understood and voluntarily waived his right to appeal when making his plea before the District Court, and again upon signing his plea agreement. We have consistently barred appeals attacking the merits of a sentence where the defendant's plea agreement prohibited appeals from sentences within the Guideline range. *See United States v. Djelevic,* 161 F.3d 104, 106–07 (2d Cir. 1998); *United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir.), *cert. denied,* 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993). Thus, the terms of Bowden's plea agreement foreclose this component of his appeal, and we grant the Government's motion for partial dismissal.

### IV.

For all the reasons set forth above, the Government's motion for partial dismissal of Bowden's appeal is GRANTED and the judgment of the District Court is hereby AFFIRMED.

---

1. In his appellate brief, Bowden does not argue that his post-arrest statements should have been suppressed. Even if he had made that argument on this appeal, as he did in the District Court, it would lack merit. He does not dispute that once the officers discovered the firearm during their frisk, they had probable cause to arrest him. The record reveals, and Bowden apparently does not dispute, that his first post-arrest statements were made spontaneously and hence were admissible. *See Rhode Island v. Innis,* 446 U.S. 291, 299–302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (*Miranda* protections apply only when statements are made in response to express questioning or its functional equivalent); *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"); *cf. United States v. Colon,* 835 F.2d 27, 30 (2d Cir.1987) (once suspect invokes *Miranda* right to remain silent, any statements to police must be spontaneous in order to be admissible), *cert. denied,* 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988). Bowden made his later statements after having been fully apprised of his *Miranda* rights.