09-1718-cr
United States v. Herring

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of April, two thousand ten.

PRESENT:    REENA RAGGI,
                 PETER W. HALL,
                      *Circuit Judges*.[*]

---------------------------------------------------------------------

UNITED STATES OF AMERICA,

                 *Appellee*,

          v.                         No. 09-1718-cr

JIMMY HERRING,

                 *Defendant-Appellant*.

---------------------------------------------------------------------

APPEARING FOR APPELLANT:     MARIANNE  MARIANO, Federal Public Defender's Office for the Western District of New York, Buffalo, New York.

APPEARING FOR APPELLEE:     JOSEPH M. TRIPI, Assistant United States Attorney, *for* Kathleen M. Mehltretter, United States Attorney for the Western District of New York, Buffalo, New York.

---

[*] Judge Rosemary S. Pooler, originally assigned to this panel, did not participate in the consideration of this appeal. The remaining two members of the panel, who are in agreement, have determined this matter in accordance with Second Circuit Internal Operating Procedure E(b).

Appeal from the United States District Court for the Western District of New York (Richard J. Arcara, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on April 22, 2009, is AFFIRMED.

Defendant Jimmy Herring, who stands convicted after a guilty plea of being a felon in possession of a firearm, see 18 U.S.C. § 922(g)(1), appeals the denial of his motion to suppress evidence and statements obtained pursuant to what he alleges was an unlawful Terry stop.[1] See Terry v. Ohio, 392 U.S. 1 (1968). Herring contends that the district court's ruling is infected by erroneous factual findings, which in any event fail to manifest the reasonable suspicion necessary to support a stop. We review the first challenge for clear error, see United States v. Casado, 303 F.3d 440, 443 (2d Cir. 2002), and the second de novo, see United States v. Lucky, 569 F.3d 101, 105-06 (2d Cir. 2009), mindful that the level of suspicion necessary to support a stop is less than a "fair probability" of wrongdoing and considerably less than "proof of wrongdoing by a preponderance of the evidence," United States v. Sokolow, 490 U.S. 1, 7 (1989); see also United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000) (observing that stop challenge requires consideration of totality of evidence "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training" (internal quotation marks omitted)). In applying these standards,

_____

[1] In his plea agreement, Herring specifically preserved his right to appeal the district court's denial of his motion to suppress evidence. The agreement states that should Herring prevail on appeal, he will be permitted to withdraw his guilty plea.

we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Factual Findings

In rejecting Herring's Terry challenge, the district court adopted in its entirety the Report and Recommendation issued by Magistrate Judge Hugh B. Scott, who, after a hearing, found that (1) while on patrol in a high-crime area of Buffalo, police officers Christopher Gerace and Timothy Rooney saw Herring in the driveway of a house known for drug activity; (2) as the officers approached Herring to ascertain his identity, they saw Herring cradling a ten- to sixteen-inch object underneath his clothing with one hand while keeping the other hand near his waistband; (3) Herring ignored repeated directives to stop and show his hands, instead partly turning his back to the officers and walking away in an evasive manner; (4) one of the officers pointed his gun at Herring and again commanded that he show his hands; and (5) when Herring continued to ignore the order, the officers handcuffed him and patted him down, discovering that the concealed object was a loaded .22 caliber rifle broken down into two pieces.

Herring asserts clear error in two of these findings: (1) that the officers saw him cradling the object before they ordered him to stop and (2) that Herring turned his back on the officers and walked away. We are not persuaded. The district court expressly credited Gerace's testimony that he observed Herring cradling an object under his jacket before he ordered Herring to show his hands. We detect no error, let alone clear error, in this

3

determination.[2]  See United States v. Lucky, 569 F.3d at 106 (noting "special deference" owed to findings based on witness credibility).

As to Herring's evasive conduct, Gerace testified that after ordering Herring to show his hands, Herring, in an "evasive manner[,] . . . turned half his back and walked away." Hr'g Tr. at 10.  The district court quoted this very testimony before listing Herring's "evasive conduct in turning his back on" the officers among the facts supporting denial of his suppression motion.  We reject Herring's argument that the district court's failure to repeat the word "half" in its description reflected a misunderstanding or mischaracterization of the record, let alone clear error.  See United States v. Lucky, 569 F.3d at 106; United States v. Iodice, 525 F.3d 179, 185 (2d Cir. 2008).

2.      Reasonable Suspicion

Herring submits that even on the facts found, the stop was unlawful because (1) his presence near a house in which drug activity was suspected was insufficient to support the stop; (2) the object concealed under his coat could have been "any innocuous or legal item,

---

[2]  In any event, Herring was not stopped for Fourth Amendment purposes until the officers physically restrained him, see United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009) ("A seizure occurs when (1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is physically restrained"), and Herring does not dispute that the officers saw the concealed object before then.  Thus, even on Herring's view of the facts, the district court properly considered the concealed object in its reasonable suspicion determination.  Cf. United States v. Swindle, 407 F.3d 563, 568-69 (2d Cir. 2005) (holding that under rule articulated in California v. Hodari D., 499 U.S. 621, 629 (1991), events occurring after order to stop but before compliance are relevant to reasonable suspicion analysis).

4

such as a clarinet or pool cue," Appellant's Br. at 18-19; and (3) his refusal to respond to orders that he show his hands was not properly considered in the district court's analysis. The arguments are without merit.

First, while presence near a suspected drug house is not enough by itself to support a Terry stop, "officers are not required to ignore the relevant characteristics of a location," including its presence in a "high crime area," in assessing whether the totality of circumstances manifests a likelihood of criminal activity. Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Similarly, a person's nervous, evasive behavior is relevant to a reasonable suspicion determination. See id. Further, as noted, Herring was not stopped for Fourth Amendment purposes until he was restrained. By that time, the officers saw that Herring was concealing an object under his clothing, and that he refused to comply with a request that he show his hands, conduct that lent considerable support to the officers' suspicion. See United States v. Simmons, 560 F.3d at 108 (observing that failure to comply with initial order to stop "reinforced the officers' determination that [defendant] may have been engaged in criminal activity"); United States v. Swindle, 407 F.3d at 569.

The possibility that the concealed object could have been innocuous did not preclude reasonable suspicion of criminal activity, such as weapon or drug possession. See Illinois v. Wardlow, 528 U.S. at 125 ("[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."); see also United States v. Rogers, 129 F.3d 76, 79 (2d Cir. 1997) (observing that possibility that defendant's pocket

5

"could have contained 'anything at all'" did not preclude probable cause to believe it contained drugs (emphasis in original)). Conduct "as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity." United States v. Padilla, 548 F.3d 179, 187 (2d Cir. 2008) (internal quotation marks omitted).[3] Here, the totality of the circumstances established that reasonable possibility. See Terry v. Ohio, 392 U.S. at 22 (observing that "a series of acts, each of them perhaps innocent in itself," can, when "taken together[,] warrant[] further investigation"), accord United States v. Singh, 415 F.3d 288, 295 (2d Cir. 2005).

3.     Conclusion

We have considered defendant's remaining arguments on appeal and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[3] The officers' decision to frisk Herring, not directly challenged on appeal, also was lawful given his concealment of an object and refusal to show his hands. See United States v. Padilla, 548 F.3d at 187 ("During a lawful stop, if the investigating officer has reason to believe that the detained individual is armed and dangerous, he may conduct a patdown search for concealed weapons.").

6