# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 19-20201

—————

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARTIN ROGELIO LONGORIA,

Defendant - Appellant

—————

Appeal from the United States District Court
for the Southern District of Texas

—————

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

GREGG COSTA, Circuit Judge:

Courts reduce the Sentencing Guidelines offense level by two points when defendants accept responsibility for their crimes. U.S.S.G. § 3E1.1(a). For offenses that score high enough (16 points or more), the government may ask the court to reduce the offense level by a third point if the defendant "timely" pled guilty so the government could "avoid preparing for trial." *Id.* § 3E1.1(b). We have long allowed the government to do what it did here: withhold the third point when the defendant seeks to suppress evidence, even though the hearing on that request is not a trial. *United States v. Gonzales*, 19 F.3d 982, 984 (5th Cir. 1994) (per curiam). The principal question in this

No 19-20201

sentencing appeal is whether we must still follow that law after an amendment to the relevant Guidelines commentary.

I.

A grand jury charged Martin Longoria with being a felon in possession of several firearms.  Longoria moved to suppress the evidence, challenging the FBI's warrantless search of his apartment where the guns were discovered. The district court denied the motion, concluding that Longoria's wife consented to the search.

Instead of pleading guilty, Longoria asked for a stipulated bench trial to preserve his suppression challenge.  The district court found him guilty based on the stipulation.

The presentence investigation report (PSR) calculated Longoria's base offense level at 20 "because the offense involved several semiautomatic firearms with large capacity magazines."  U.S.S.G. § 2K2.1(a)(4)(B).  The PSR also recommended three enhancements.  The PSR did not recommend a reduction for acceptance of responsibility because, according to the report, Longoria offered only a "vague," terse apology.

At sentencing, the district court overruled Longoria's objection to his base offense level, agreeing with the PSR that the offense involved large-capacity magazines.  On other issues, however, the court ruled in Longoria's favor. It sustained his objection to a proposed enhancement for using a firearm in connection with another felony.  U.S.S.G. § 2K2.1(b)(6)(B).  It also sustained, in part, Longoria's objection to the withholding of the three-level reduction for acceptance of responsibility.  Contrary to the PSR, the court "read [Longoria's apology] as an acknowledgement of acceptance of responsibility" and granted the two-level downward adjustment.  But the third point requires a motion from the prosecutor.  U.S.S.G. § 3E1.1(b).  The prosecutor explained she did

No 19-20201

not file that motion because Longoria forced the government to prepare for "a full-blown suppression hearing."

Those rulings resulted in a Guidelines range of 63 to 78 months' imprisonment. The court sentenced Longoria to a prison term of 78 months. The judge noted this was a "relatively lenient sentence" given the objection she had sustained to the four-point enhancement for use in another felony, and she "would never go lower."[1]

Despite seeking a stipulated bench trial to allow an appeal of the suppression ruling, Longoria now challenges only his base offense level and the government's refusal to move for the third acceptance point.

## II.

The base offense level of 20 was proper if Longoria's felon-in-possession crime involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." *Id.* § 2K2.1(a)(4)(B)(i)(I). A firearm meets that definition if it had attached to it, or was in close proximity to, "a magazine or similar device that could accept more than 15 rounds of ammunition." *Id.* § 2K2.1 cmt. n.2.

In applying this elevated base offense level, the district court relied on the FBI agent's statement that five large-capacity magazines were attached to or near the semiautomatic firearms that Longoria possessed. We review the court's finding—like all other factual determinations—for clear error. *United States v. Moton*, 951 F.3d 639, 644 (5th Cir. 2020). A finding is clearly erroneous only if we are "left with the definite and firm conviction that a

---

[1] Based on these comments, the government argues any errors in the Guideline calculation would be harmless. Longoria responds that (1) a sentence at the high end of the Guidelines range shows the Guidelines had an impact and (2) the district court did not consider what the range would have been with the third point for acceptance. Because we find no errors, we need not reach the harmlessness question.

mistake has been committed." *United States v. Mata*, 624 F.3d 170, 173 (5th Cir. 2010) (per curiam) (quotation omitted).

Longoria asserts that the agent's statement is unreliable because it is "conclusory" and "not capable of evaluation as to reliability." Neither ground is persuasive. A sentencing judge "may properly find sufficient reliability on a [PSR] which is based on the results of a police investigation." *See, e.g.*, *United States v. Vela*, 927 F.2d 197, 201 (5th Cir. 1991); *see also United States v. Rico*, 864 F.3d 381, 386 (5th Cir. 2017). The statement of the FBI agent, who had first-hand knowledge of the search, easily fits that bill. And the statement asserts the concrete fact that the FBI seized "five high-capacity magazines . . . either attached to a rifle or nearby to the recovered rifles" during the search.

Contrary to Longoria's suggestion, he could have cross-examined the FBI agent or introduced other evidence to undercut the statement's accuracy. *See* FED. R. CRIM. P. 32(i)(2) (providing that a sentencing judge "may permit the parties to introduce evidence on . . . objections" to the PSR); *see also* U.S.S.G. § 6A1.3(a) ("When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor."). Indeed, Longoria tried to rebut the statement by arguing that a photo of his apartment he had taken before the search showed only handgun magazines, not clips that would trigger the elevated base offense level. To the extent this constitutes rebuttal evidence, the district court was entitled to credit the agent's statement instead. *See United States v. Barfield*, 941 F.3d 757, 766 (5th Cir. 2019) ("It is proper for the district court to rely on a presentence report's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts." (quotation omitted)).

No 19-20201

Longoria fails to show that the district court clearly erred in relying on the FBI's agent statement about what was found in the apartment.  The base offense level for firearms that can accept large-capacity magazines was proper.

III.

That brings us to the question we mentioned at the outset: Was the government required to ask the court to award the additional point off for acceptance of responsibility?  A defendant is eligible for the extra point if his offense level is at least 16 and the government files a motion:

> stating that the defendant has assisted . . . in the investigation or prosecution of his own misconduct by timely [giving notice] of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

U.S.S.G. § 3E1.1(b).

We review the decision to withhold such a motion only for whether the government "considered an interest within [section] 3E1.1." *United States v. Halverson*, 897 F.3d 645, 656 (5th Cir. 2018).  As the government's reason for withholding the motion was the "full-blown suppression hearing,"[2] the issue is whether the resources expended litigating a suppression motion are an interest the government can cite in withholding the third-point motion.

---

[2] There may have been another reason for the government to withhold the motion for the third point: Longoria did not plead guilty.  He instead agreed to a stipulated bench trial (to preserve the suppression appeal he never brought).  While we recently held that a stipulated bench trial should not preclude a defendant from receiving the first two points for accepting responsibility, *United States v. Najera*, 915 F.3d 997, 1004 (5th Cir. 2019), we have caselaw saying it can justify the government's refusal to seek the third point given that eligibility for the additional point focuses on the defendant's saving prosecutorial and judicial resources, *see, e.g., United States v. Zamarripa*, 1999 WL 642832, at *1 (5th Cir. July 20, 1999) (per curiam); *United States v. Garcia*, 135 F.3d 951, 955–57 & n.7 (5th Cir. 1998); *United States v. Leonard*, 61 F.3d 1181, 1187 (5th Cir. 1995).  But because the government justified its nonfiling on the defendant's seeking suppression, we consider only whether that was a proper interest.

No 19-20201

If we were writing on a blank slate, Longoria might have a compelling argument. Section 3E1.1(b) speaks of "trial," not pretrial hearings, and preparing for a suppression hearing usually requires less time and resources than trial preparation. Indeed, more circuits agree with Longoria's position than with the one we have taken. *Compare United States v. Rogers*, 129 F.3d 76, 80–81 (2d Cir. 1997) (per curiam) (applying our rule), *with United States v. Price*, 409 F.3d 436, 443–44 (D.C. Cir. 2005); *United States v. Marquez*, 337 F.3d 1203, 1212 (10th Cir. 2003); *United States v. Kimple*, 27 F.3d 1409, 1414–15 (9th Cir. 1994) (all holding that the government cannot withhold the third point because the defendant sought to suppress evidence).

Even if a minority view, our precedent of course poses a problem for Longoria. One published decision is all it takes for *stare decisis*. Yet it is worth noting that here our precedent also has multiplicity on its side; for a quarter century we have repeatedly and "routinely affirmed the denial of a one-level reduction under [section] 3E1.1(b) when the government had to prepare for a suppression hearing." *United States v. Silva*, 865 F.3d 238, 244 (5th Cir. 2017) (per curiam) (citing *United States v. Delaurier*, 237 F. App'x 996, 998 (5th Cir. 2007) (per curiam); *United States v. Cruz*, 1999 WL 1067627, at *1 (5th Cir. Oct. 19, 1999) (per curiam); *Gonzales*, 19 F.3d at 984).

Longoria believes he has a way around this entrenched caselaw: "an intervening change in law." *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (recognizing such a change as an exception to the rule of orderliness). He cites the following 2013 amendment to the commentary on the acceptance-of-responsibility Guideline: "The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." U.S.S.G. supp. to app. C, cmt. to amend. 775 (2013). That example resolved a circuit

split on whether "a defendant's refusal to sign an appellate waiver is a legitimate reason . . . to withhold" the third point. *Id.*; *see also United States v. Palacios*, 756 F.3d 325, 326 n.1 (5th Cir. 2014) (en banc) (abrogating *United States v. Newson*, 515 F.3d 374 (5th Cir. 2008), based on Amendment 775). Longoria reads Amendment 775 as emphasizing that only the interest section 3E1.1 specifies about saving trial resources can support withholding the third point. Two panels of this court have recognized that this is a colorable argument, stating "[i]t is now unclear . . . 'to what extent [Amendment 775] was meant to reject our previous rule that a suppression hearing may justify withholding a [s]ection 3E1.1(b) reduction.'" *Silva*, 865 F.3d at 244–45 (quoting *United States v. Pena-Gonzalez*, 618 F. App'x 195, 201 (5th Cir. 2015) (per curiam)).

Today we clarify any confusion and hold that the amendment does not clearly overrule our caselaw allowing the government to withhold the third point when it must litigate a suppression motion.

To be sure, a Sentencing Commission amendment modifying Guidelines commentary can override our precedent because that commentary is, with a few exceptions, "authoritative." *Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). So when we interpret a Guidelines section, and the Commission amends the Guidelines Manual commentary to overrule our interpretation, the Commission's reading controls. *See id.*

The Sentencing Commission's amendment, however, must clearly overrule our caselaw to warrant a departure from the rule of orderliness. *See United States v. Fitzhugh*, 954 F.2d 253, 254 (5th Cir. 1992) (concluding that

an amendment overruled precedent because it "made clear" that "the Commission . . . repudiated" controlling caselaw)[3]; *cf. Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (per curiam) ("For a Supreme Court decision to satisfy this Court's rule of orderliness, it must be unequivocal, not a mere 'hint' of how the Court might rule in the future." (quotation omitted)). If a "mere hint" from the Commission that our caselaw might be wrong were enough to allow a panel to consider issues anew, judges would have too much leeway to invalidate caselaw they did not like in the first place. *Cf. Jacobs*, 548 F.3d at 378 (explaining that the rule of orderliness aims to prevent a subsequent panel from overriding a prior panel's "flawed" opinion).

Amendment 775 does not contain the unequivocal override needed to get past our precedent. *See United States v. Kuban*, 94 F.3d 971, 974 n.6 (5th Cir. 1996) (refusing to overrule our precedent on section 3A1.1 because the change to the commentary did not address our interpretation of the Guideline). It does not talk about whether the filing of a suppression motion, or other pretrial matters, is a basis for withholding the third point. And while the amendment expressly resolves a circuit split on whether the government can withhold the motion because the defendant refused to sign an appeal waiver, it tellingly does not directly address the circuit split that has long existed on whether the government's having to go through a suppression hearing is a valid basis for not requesting the third point. That silence suggests that the Commission,

---

[3] A number of cases illustrate when that override is clear. *See United States v. Martinez-Ovalle*, --F.3d--, 2020 WL 1816044, at *1 n.6 (5th Cir. 2020) (recognizing that an amendment modified a Guideline's text and commentary to "specifically nullify" precedent); *United States v. Pimpton*, 558 F. App'x 335, 337–38 (5th Cir. 2013) (recognizing that an amendment defining a term abrogated a decision that defined the term differently); *United States v. Setser*, 568 F.3d 482, 497 (5th Cir. 2009) (concluding that an amendment overruled a decision because it resolved a circuit split involving the decision and adopted the other circuit's approach); *United States v. Calverley*, 11 F.3d 505, 511 n.14 (5th Cir. 1993) (calling into doubt precedent that was "based solely" on Guideline language that an amendment deleted).

which keeps track of splits on Guidelines issues, chose not to clarify section 3E1.1 in the suppression context. *Cf. United States v. Vargas-Duran*, 319 F.3d 194, 203 (5th Cir. 2003) (Clement, J., dissenting) (disagreeing with the majority's view that an amendment, which the Commission "intended to render moot an unrelated circuit split," overruled controlling precedent), *on reh'g en banc* 356 F.3d 598, 599 (5th Cir. 2004) (taking the opposite view of the original panel and holding that section 2L1.2's use-of-force requirement "require[d] that a defendant intentionally avail himself of that force"), *overruled in part by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc).

Longoria points out that we considered Amendment 775 in ruling that a prosecutor could not withhold a motion for the third point merely because the defendant filed objections at sentencing. *See United States v. Castillo*, 779 F.3d 318, 324–26 (5th Cir. 2015). Amendment 775 does not directly address that question, yet we relied on the general point that section 3E1.1 "refers to efficient allocation of governmental resources . . . only in the context of preparing for trial." *Id*. at 324. *Castillo*, however, was looking as an original matter at whether saving sentencing resources was a legitimate section 3E1.1 interest. No precedent controlled, so *Castillo* did not have occasion to decide whether the new commentary would be clear enough to overrule a contrary precedent on the question it decided. And there is nothing new about section 3E.1.1's focus on "trial" preparation. That has always been in the Guidelines. *See United States v. Tello*, 9 F.3d 1119, 1128 (5th Cir. 1993).

Indeed, our first case addressing the third point in connection with the suppression issue tried to reconcile its holding with the Guidelines' trial focus, explaining that a "suppression hearing [could be] in effect the substantive equivalent of a full trial." *Gonzales*, 19 F.3d at 984. As is often true in felon-

in-possession cases, that was largely the case here. The search Longoria challenged yielded the weapons he was charged with possessing. While defeating the suppression motion may not have fully proved Longoria's unlawful possession, it put the government near the goal line. *United States v. Mudd*, 685 F.3d 473, 477 (5th Cir. 2012); *cf. Rogers*, 129 F.3d at 80 ("[I]n terms of preparation by the government[,] the suppression hearing was the main proceeding in this case. . . . Once th[e] [suppression] motion was denied, convicting [the defendant] became child's play for the prosecution.").

Whatever we think about *Gonzales*'s "substantive equivalent of a full trial" reasoning today, we remain bound by it because the Sentencing Commission has not clearly overridden our precedent. *See Kuban*, 94 F.3d at 974 & n.6. Under that longstanding caselaw, the government did not rely on an impermissible interest in withholding the third point for acceptance of responsibility.

\* \* \*

The judgment is AFFIRMED.